537 So.2d 978 (1989)
E.F. HUTTON & COMPANY, INC., et al., Defendants/Appellants,
v.
Christ M. ROUSSEFF, et al., Plaintiffs/Appellees.
No. 72361.
Supreme Court of Florida.
January 5, 1989.
Rehearing Denied February 27, 1989.
C. Timothy Corcoran, III of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and William G. Campbell, Jo Lanier Meeks, Joseph A. Ingrisano and G. Wayne Hillis, Jr. of Kutak, Rock & Campbell, Atlanta, Ga., for defendants/appellants.
Martin T. Fletcher, Sr., Scott T. Niemann and Anne Carney of Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for plaintiffs/appellees.
Charles L. Stutts, Gen. Counsel and R. Michael Underwood, Deputy Gen. Counsel, Florida Dept. of Banking and Finance, Tallahassee, amicus curiae, for State of Fla., ex rel. Gerald Lewis, Comptroller of Florida.
SHAW, Justice.
This case is before us on the following question of Florida law certified by the United States Court of Appeals, Eleventh Circuit:
In an action under the Florida Securities and Investor Protection Act, Fla. Stat. §§ 517.301, 517.211, is the claimant required to prove that his loss was proximately caused by the defendant's fraud?
Rousseff v. E.F. Hutton Co., 843 F.2d 1324, 1326 (11th Cir.1988). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. We answer the question in the negative.
In 1982, Rousseff purchased two million dollars worth of limited partnership shares in an oil and gas drilling venture known as Anadarko Oil & Gas Partners 1982 (AOGP). The purchase was made from AOGP's general partner, Anadarko Land and Exploration Company (Anadarko). An employee of E.F. Hutton Co. (Hutton) affirmatively solicited Rousseff's investment and Hutton was Anadarko's exclusive sales agent for the transaction. Anadarko's experts had projected that the gas well which *979 formed the venture's basis contained between six and ten billion cubic feet (BCF) of natural gas. Hutton's experts, however, had projected that it contained only 3.6 BCF. Prior to making his investment, Rousseff was told of the Anadarko projections but not of the Hutton projections. When the well ultimately became productive, its reserves were fixed at less than four BCF.
Unsatisfied with his investment, Rousseff filed suit in federal court against AOGP, Anadarko, and Hutton under section 10(b) of the Securities Exchange Act of 1934 (1934 Act),[1] federal rule 10b-5,[2] the Florida Securities Act (Florida Act),[3] and the common law theory of fraud. AOGP and Anadarko settled. The claim against Hutton proceeded to trial, and in accordance with the jury's verdict, the court entered judgment allowing Rousseff to rescind his purchase. Hutton appealed and the federal circuit court reversed as to the federal and common law fraud claims on the ground that the trial court failed to submit to the jury the question of whether Rousseff's loss was proximately caused by Hutton's fraud. As to the Florida law claim, the court certified the above question to this Court.
Relevant federal law consists of the Securities Act of 1933 (1933 Act),[4] which governs the initial issuance of securities, and the 1934 Act, which governs subsequent trading in securities. Section 12(2) of the 1933 Act provides a civil remedy for a buyer against his seller. It states:
§ 77l. Civil liabilities arising in connection with prospectuses and communications
Any person who 
... .
(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
Rule 10b-5, promulgated under section 10(b) of the 1934 Act, provides a criminal or administrative remedy against any person who commits fraud in connection with the purchase or sale of any security. It states:
§ 240.10b-5 Employment of manipulative and deceptive devices.
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
Though rule 10b-5 offers no civil remedy, federal courts have implied one under it and have established a body of court-made *980 law defining the remedy. See, e.g., Huddleston v. Herman & MacLean, 640 F.2d 534 (5th Cir.1981).
State securities laws operate in conjunction with the federal laws; federal laws do not supercede state laws. 15 U.S.C. §§ 77p, 78bb(a) (1982). The Florida statutes in issue here are sections 517.301 and 517.211, Florida Statutes (1981). Section 517.301(1) is similar in language to rule 10b-5. It provides:
517.30 Fraudulent transactions; falsification or concealment of facts.  It is unlawful and a violation of the provisions of this chapter for any person:
(1) In connection with the offer, sale, or purchase of any security, including any security exempted under the provisions of s. 517.051 and including any security sold in any transaction exempted under the provisions of s. 517.061, directly or indirectly:
(a) To employ any device, scheme, or artifice to defraud;
(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
(c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any person.
Section 517.211, which operates upon section 517.301, is similar in effect to section 12(2) of the 1933 Act. It provides:
517.211 Remedies available in cases of unlawful sale. 
... .
(2) Any person purchasing or selling a security in violation of s. 517.301, and every director, officer, partner, or agent of or for the purchaser or seller, if the director, officer, partner, or agent has personally participated or aided in making the sale or purchase, shall be jointly and severally liable to the person selling the security to or purchasing the security from such person in an action for recission [sic], if the plaintiff still owns the security, or for damages, if the plaintiff has sold the security.
(3) In an action for recission [sic]:
(a) A purchaser may recover the consideration paid for the security, plus interest thereon at the legal rate, less the amount of any income received by the purchaser on the security upon tender of the security.
(b) A seller may recover the security upon tender of the consideration paid for the security, plus interest at the legal rate, less the amount of any income received by the defendant on the security.
(4) In an action for damages brought by a purchaser of a security, the plaintiff shall recover an amount equal to the difference between:
(a) The consideration paid for the security, plus interest thereon at the legal rate from the date of purchase; and
(b) The value of the security at the time it was disposed of by the plaintiff, plus the amount of any income received on the security by the plaintiff.
(5) In an action for damages brought by a seller of a security, the plaintiff shall recover an amount equal to the difference between:
(a) The value of the security at the time of the complaint, plus the amount of any income received by the defendant on the security; and
(b) The consideration received for the security, plus interest at the legal rate from the date of sale.
Hutton claims that because section 517.301 closely tracks rule 10b-5, the legislature intended that the body of federal case law which has been established for civil remedies under rule 10b-5 applies equally to Florida claims. Loss causation is a requirement under this federal law and provides that the decline in value of the injured party's investment must result directly from the offending party's fraud, not from some other source, e.g., independent *981 market forces.[5] Rousseff asserts that because the overall effect of sections 517.301 and 517.211 is similar to that of section 12(2), federal case law interpreting section 12(2), which has no loss causation requirement, should be relevant.
Section 517.301 makes securities fraud illegal. It creates a criminal or administrative offense, as does rule 10b-5. The two provisions are similar in language. Both allow the government to pursue wrongdoers. Because no federal statute exists that allows private parties to obtain civil relief for many of the offenses embraced by rule 10b-5, the federal courts have created such a right. Under Florida law, no court-made implied civil right has been created under section 517.301 because companion section 517.211 contains an express civil liability provision. Hutton's attempt to analogize rule 10b-5 and section 517.301 breaks down under scrutiny. A civil action under federal law implements rule 10b-5 and a body of judge-made law. A similar action under Florida law implements sections 517.301 and 517.211. These separate bodies of federal and state law are vastly different.
Rule 10b-5 is wide-ranging, covering a broad spectrum of fraud. It applies to any person who is deceitful in connection with the purchase or sale of securities. It requires no privity between buyer and seller. Remedies are not restricted. In fashioning a civil remedy under this rule, federal courts have looked to the common law cause of action that best fits the factual circumstances embraced by the rule. They have adopted the requirements of the common law tort of deceit. Huddleston, 640 F.2d at 543. The elements there are: 1) misrepresentation, 2) of a material fact, 3) knowingly made, 4) on which the buyer relied, and 5) which caused the buyer's injury. L. Loss, Fundamentals of Securities Regulation 712, 874-75 (1988). See also Huddleston, 640 F.2d at 543. It is clear that under federal law loss causation was deemed necessary in order to balance and fairly restrict liability under a wide-ranging statute.
The Florida statutes, on the other hand, are far more restrictive. Because section 517.211 contains an express civil liability provision, Florida courts need fashion no court-made civil right. They need only follow the clear language of the statute. Section 517.211 says that if a seller (or buyer) is untruthful in a sale, the buyer (or seller) can rescind the transaction and get his money back. This provision applies to a far more narrow group of activities than does rule 10b-5. Buyer/seller privity is required. The remedy is restricted to consideration paid. The effect of section 517.211 is similar to that of federal section 12(2), except that whereas 12(2) protects only buyers, section 517.211 protects both buyers and sellers. Loss causation has never been required by federal courts interpreting section 12(2). See L. Loss, supra, at 887-92. Both sections appear to be patterned after the common law contract cause of action termed recision. See id. at 888. Because of the limited scope of the parties, activities and remedies embraced by this common law cause of action, its requirements are far less restrictive than those of deceit. "The elements of rescission, in a nutshell, are `misrepresentation' of a `material' `fact' on which the buyer justifiably `relied.'" Id. at 873. Loss causation has never been required there. "The buyer need not show any causal connection between the misrepresentation and his damage; indeed, he need not even show that he has been damaged." Id.
Proof of loss causation is not mentioned in sections 517.211 or 517.301, nor is it required under section 12(2), which is the comparable federal law, or under the common law cause of action from which the state and federal laws derived. Accordingly, we hold that proof of loss causation is not required in a civil securities proceeding under sections 517.211 and 517.301, Florida Statutes. We answer the certified question in the negative. This opinion shall be *982 transmitted forthwith to the United States Court of Appeals, Eleventh Circuit.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] 15 U.S.C. §§ 78a-78ll (1982).
[2] 17 C.F.R. § 240.10b-5 (1982).
[3] Ch. 517, Fla. Stat. (1981).
[4] 15 U.S.C. §§ 77a-77bbbb (1982).
[5] The terms loss causation and proximate causation are often used interchangeably in rule 10b-5 cases.