622 So.2d 1085 (1993)
Joan C. PALMER, Appellant,
v.
SHEARSON LEHMAN HUTTON, INC., Appellee.
Luther E. YOUNG, Marlene W. Young, and Young Packaging Products, Inc., Appellants,
v.
SHEARSON LEHMAN HUTTON, INC., Appellee.
Nos. 92-2115, 92-2692.
District Court of Appeal of Florida, First District.
August 4, 1993.
Rehearing Denied September 2, 1993.
*1086 H. Michael Madsen and O'Bannon M. Cook of Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, P.A., Tallahassee, and John L. Fiveash, Jr., of Fiveash & Associates, P.A., Pensacola, for appellants.
Nicholas V. Pulignano, Jr., and William K. Thames, II, of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellee.
ZEHMER, Chief Judge.
Joan C. Palmer (Palmer), and Luther E. Young, Marlene W. Young, and Young Packaging Products, Inc. (Young), appeal adverse summary final judgments entered in their separate actions against Shearson Lehman Hutton, Inc. (Hutton), a securities dealer registered in Florida under section 517.12, Florida Statutes. Appellants' respective causes of action were based on Hutton's alleged negligence in failing to report to the Department of Banking and Finance (the Department) that David Kury, a Hutton employee registered in Florida as an associated person pursuant to section 517.12, Florida Statutes, had defrauded several clients while representing Hutton and that these wrongful acts had caused Hutton to terminate Kury's employment. Palmer and Young are investors allegedly defrauded by Kury several years after Hutton had terminated Kury's employment and while Kury was registered as an associated person with subsequent dealers. They assert that the trial court erred in granting summary judgment for Hutton based on the ruling that their complaints did not allege any facts that would impose a legal duty owed by Hutton to Palmer and Young. They argue that their complaints, which were supported by the evidence in the record, allege facts showing that Hutton had both a common law duty and a statutory duty to correctly report the fact *1087 of Kury's termination of employment together with the reasons therefor. Although we agree with the trial court that the complaints are legally insufficient to show that Hutton owed a common law duty to Appellants independent of relevant statutes, we do not agree that the complaints fail to allege facts sufficient to show that Hutton owed a statutory duty to Appellants and can be held accountable in negligence for Appellants' alleged damages on that legal theory. Accordingly, we reverse.
These cases primarily arise out of relationships and responsibilities created and regulated under chapter 517, Florida Statutes (1983), at that time entitled the "Florida Securities Act." This act regulates the sale of securities in Florida and requires that dealers[1] and associated persons[2] be registered with the Department prior to selling or offering to sell securities to any persons in this state. § 517.12, Fla. Stat. (1983). Registrations of associated persons are specific with respect to the securities dealer identified at the time the registration is approved. Thus, each time an associated person is terminated from employment with a dealer, whether voluntarily or involuntarily, the dealer must notify the Department of that person's termination and the reason therefor; and to become associated with another dealer, the terminated associated person must reregister with the Department. § 517.12, Fla. Stat. (1983); Department of Banking & Finance v. Evans, 540 So.2d 884, 885 (Fla. 1st DCA 1989).
For purposes of this appeal, the allegations in the complaints and evidence filed of record establish the following material facts.[3] From 1978 until January 1984, David Kury was registered as an associated person of E.F. Hutton & Co., Inc.,[4] and was the manager of Hutton's Pensacola branch office under the direct supervision of Hutton's Montgomery, Alabama, office manager. In early 1983, Kury's supervisor, Fred Brown, discovered that Kury had taken money from several of his customers in exchange for personal and corporate promissory notes.[5] Brown immediately notified Hutton's regional vice president and legal department. Acting on the advice of the Hutton legal department, Brown requested that Kury furnish him a list of the people to whom Kury or his corporation owed money and the amounts owed. Hutton then sent letters to all of these people, asking them to acknowledge that Hutton was not obligated on Kury's promissory notes.[6] Brown testified in the administrative disciplinary proceeding against Kury that he was aware that Kury's actions violated SEC regulations as well as Hutton's internal rules, and that in January 1984, he asked for and obtained Kury's resignation. *1088 Subsequently, Hutton filed a Uniform Termination Notice For Securities Industry Registration (a "Form U-5") with the Central Registration Depository System stating that Kury had voluntarily resigned. On this form, Hutton falsely reported that it had no reason to believe that Kury had violated any state or federal law or regulation, or that Kury had engaged in any conduct inconsistent with just and equitable principles of trade.
Soon after leaving Hutton, Kury was reregistered by the Department as an associated person of Prudential-Bache Securities Corporation (Bache) and obtained employment with Bache. In March 1985, Kury left Bache and began working for Associated Planners Securities Corporation (Associated) as an associated person and was again reregistered by the Department.
In 1986, Appellants Luther and Marlene Young visited Kury at his Associated office and employed him to provide them with financial planning services. In early 1987, Kury induced Luther and Marlene Young, as representatives of Young Packaging Products, Inc., to purchase a $50,000 corporate promissory note issued by Kury Financial.
Kury left his employment with Associated in April 1987, and in May 1987 obtained employment with and reregistered as an associated person of American Capital Equities Corporation (American). In July 1987, while Kury was working for American, he induced Young to personally purchase a $30,000 promissory note from Kury Financial. Also, in July 1987, Appellant Palmer visited Kury at his American office and hired him to provide her with financial planning services. In December 1987, Kury induced Palmer to pay $20,000 for a promissory note from Kury Financial.
In May 1988, the Department commenced an investigation of Kury's activities and as a consequence filed an administrative complaint against Kury and Kury Financial seeking to revoke his registrations as an "associated person" and an "investment advisor" on the grounds, inter alia, that he had engaged in the sale of unregistered securities, i.e., promissory notes issued by Kury or Kury Financial to investors. In January 1989, a hearing officer with the Division of Administrative Hearings (DOAH) entered a recommended order wherein he found, inter alia, that 50 persons were holding notes from Kury and/or Kury Financial in amounts ranging from $5,000 to $200,000; that Kury used the proceeds of the notes to pay business expenses for himself and the corporations he controlled as well as his personal expenses, including the financing of his home (at a cost of approximately $1,000,000); that Kury had sold the notes or offered them for sale without registering them as required by law; that Kury had failed to maintain books and records required by law; and that Kury had sold the notes without making disclosures of certain material facts.[7] By final order entered in April 1989, the Department permanently revoked Kury's securities license.
In March 1989, Appellants filed complaints against Kury, Hutton, and other securities dealers. Count V of each complaint alleged Hutton's negligence in covering up Kury's fraud and falsely advising the Department regarding his termination. Hutton moved for summary final judgment, and in support of its motion attached a copy of an order wherein the United States District Court for the Northern District of Florida granted partial summary judgment in related cases on identical causes of action based on identical facts (the only difference being the identity of the plaintiffs). The trial court entered summary final judgment in each action, ruling that the complaints did not allege facts giving rise to any legal duty owed by Hutton to Appellants and for that reason failed to state a cause of action upon which relief could be granted. (This ruling was consistent with the federal court order filed with Hutton's motion.)
*1089 On this appeal, Appellants first argue that Kury's conduct while he was employed by and represented Hutton created a foreseeable zone of risk that Kury might continue to defraud securities investors even after leaving Hutton. According to Appellants, because Hutton was aware of Kury's fraudulent activities at the time it terminated his employment, it had a common law duty to take sufficient precautions at that time to ensure that other prospective investors were protected from similar harm by Kury after he left Hutton's employ, citing McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). We construe this argument by Appellants as urging the existence of a legal duty independent of any statutory provisions regulating persons in the securities business, as Appellants argue the statutory duty as a separate point. We reject this argument.
Under the common law, a person has no duty to control the tortious or criminal conduct of another or to warn those placed in danger by such conduct unless there is a special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of such conduct. Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991). See also Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 918 (Fla. 1985). Implicit in the special relationship exception to this general rule is the concept that, when relying on a special relationship between the defendant and the person whose conduct needs to be controlled, the defendant must have the right or ability to control the third person's conduct. Garrison Retirement Home Corp. v. Hancock, 484 So.2d 1257 (Fla. 4th DCA 1985). Kury was not in the employ and control of Hutton at the time the alleged injuries occurred, and Hutton had not employed him for several years. Because Hutton had no ability to control Kury's conduct at the time the alleged injuries occurred, this special relationship exception is not satisfied as between Hutton and Kury. Likewise, the special relationship exception is not satisfied as between Hutton and Appellants because the latter were never customers of Hutton and did not deal with Kury at the time he worked for Hutton. Since the complaints do not allege facts sufficient to show the existence of a special relationship, as required to circumvent the general rule that there is no common law duty to prevent the misconduct of third persons, the trial court correctly ruled that Hutton owed Appellants no duty under the common law, apart from any relevant statutory requirements, with respect to the alleged negligent conduct.[8]
The trial court erred, however, in ruling that Hutton did not owe Appellants any legal duty of care arising out of applicable statutes in respect to the alleged negligent conduct. When read in pari materia, subsections 517.12(11)(b)[9] and 517.301(3), Florida Statutes (1983), and rule 3E-600.08, Florida Administrative Code, which was promulgated pursuant to the legislature's directive in subsection 517.12(11)(b), impose legal duties on Hutton that will support a cause of action for negligence under the circumstances shown in this case. Subsection 517.12(11)(b) provides:
Every dealer shall promptly file with the [Department of Banking and Finance], as prescribed by rules adopted by the department, notice as to the termination of employment of any associated person registered for such dealer in this state and shall also furnish the reason or reasons for such termination.

*1090 (Emphasis added.) Section 517.301 provides in pertinent part:
It is unlawful and a violation of the provisions of this chapter for any person:
* * * * * *
(3) In any matter within the jurisdiction of the department, to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry.
(Emphasis added.) Rule 3E-600.08 [now 3E-600.008] provided in pertinent part:
(1) Where a registrant ... is terminated for any reason, notice of such fact on the forms prescribed by the Department shall be filed, within twenty (20) calendar days of the date of termination, with the Department.
* * * * * *
(3) The forms presently acceptable for notice to the Department under Subsection (1) above as adopted by Rule 3E-100.09 are:
* * * * * *
(d) Associated Persons (Form U-5)
The statutory provisions clearly imposed on Hutton, at the time Kury left its employ, a legal obligation to report the fact of his termination to the Department, to accurately state the reason for such termination, and to specify any illegal or unprofessional activity committed by Kury then known by Hutton. The rule required Hutton to make the report to the Department by filing a form U-5.
The law is settled that a statute creates a duty of care upon one whose behavior is the subject of the statute to a person who is in the class designed to be protected by the statute, and that such duty will support a finding of liability for negligence when the injury suffered by a person in the protected class is that which the statute was designed to prevent. deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973). Appellants' complaints allege that Hutton was under a legal duty to report to state and federal securities authorities and to the National Association of Securities Dealers (NASD) the fact that it had terminated Kury's employment and the reason for such termination, and that Hutton had breached this duty. In support of these allegations, Appellants submitted to the trial court a copy of the form U-5 (the document prescribed by the Department pursuant to rule 3E-600.08) that Hutton filed with the Central Registration Depository of the NASD notifying the Department of Kury's termination. Hutton reported on the form that Kury voluntarily resigned and that there was no reason to believe that Kury had violated any securities law or regulation, or any agreement with or rule of any governmental agency or regulatory body, or had engaged in any conduct that might be inconsistent with just and equitable principles of trade. Assuming that the facts alleged in the complaints and testified to by Hutton's manager are true, and Hutton offered no evidence to the contrary in support of its motions for summary judgment, a jury could lawfully find that Hutton knowingly and willfully filed with the Department false information concerning the reason for Kury's termination, in violation of the legal obligations intended to protect investors from such conduct that were imposed on Hutton by subsections 517.12(11)(b) and 517.301(3), and rule 3E-600.08.[10]
Although the violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury constitutes negligence per se, deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 *1091 (Fla. 1973), the fact of negligence per se resulting from a statutory violation does not necessarily mean that there is actionable negligence. Id. at 201. It must also be shown that the plaintiff falls within the class of persons the statute was intended to protect, that the plaintiff suffered an injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of this injury. Id. We conclude that the facts alleged in support of the causes of action asserted in these cases are legally sufficient to satisfy these elements.
The broad legislative purpose underlying the enactment of chapter 517, the "Florida Securities Act," was to protect the investing public from fraudulent and deceptive practices by persons selling securities in the securities market. Rudd v. State, 386 So.2d 1216, 1218 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1380 (Fla. 1981). See also Nichols v. Yandre, 151 Fla. 87, 9 So.2d 157, 159 (1942) (The "Uniform Sale of Securities Act" (formerly Chapter 14899, Laws of Florida (1931)) was designed to protect the investor in securities, not against losses from a fluctuating market, but from any fraud that might be practiced upon him.); Stottler Stagg & Associates, Inc. v. Argo, 403 So.2d 617, 618 (Fla. 5th DCA), appeal dismissed, 408 So.2d 1092 (Fla. 1981) (The Securities Act is not intended as protection for those shown able to fend for themselves; rather, the purpose is to protect the public from fraudulent and deceptive practices in the sale and marketing of securities.).[11] The reporting provisions found in subsection 517.12(11)(b) and the prohibition of filing false reports with the Department found in subsection 517.301(3) are designed to enable the Department to timely obtain truthful information about the conduct of persons registered to sell securities so that it can discipline or otherwise prevent registered persons from practicing fraud upon members of the investing public. Appellants are within the class of persons chapter 517 was designed to protect because they are investors in securities and dealt with Kury as a registered securities broker. Likewise, Appellants suffered the type of injury the statutes were designed to prevent because they lost moneys invested as a consequence of the fraudulent acts of the reregistered broker, Kury.
We reject as meritless Hutton's assertion that Appellants are not within the class of persons chapter 517 was designed to protect simply because the supreme court stated in E.F. Hutton & Co., Inc. v. Rousseff, 537 So.2d 978 (Fla. 1989), that privity between the buyer and seller is required to recover damages for violations of that chapter. Rousseff does not deal with claims of statutory violations like those alleged in these cases. In Rousseff, the supreme court held that the claimant was not required to prove that his loss was proximately caused by the defendant's fraud because the statutes on which the state law claim was based and the remedies expressly provided therein did not explicitly require proof of loss causation. The portions of the statutes involved in Rousseff, subsections 517.211(2)-(5) and 517.301(1), Florida Statutes (1981), relate only to securities transactions between buyers and sellers and the statutory remedies provided in connection with such sales. The provisions of subsection 517.301(1) involved in Rousseff explicitly apply only "[i]n connection with the offer, sale, or purchase of any security," and perforce can apply only when there is privity between the parties involved. Subsections 517.211(2)-(5) deal only with claims for rescission or damages due to a violation of paragraph (1) of section 517.301 in disputes between buyers and sellers of securities.
Appellants do not rely on these provisions in sections 517.211 and 517.301(1) as the basis for their causes of action in these cases. Nothing in the Rousseff opinion purports to pass on the statutory provisions in subsection 517.301(3), the section relied on by Appellants in these cases. That opinion does not purport to hold that the remedies provided in section 517.211 *1092 are exclusive of all other remedies recognized by law, nor is it likely that the court would have so held in view of the statutory and common law remedies provided or preserved to investors in other sections of chapter 517. See, e.g., § 517.241, Fla. Stat. (1983).[12] Unlike subsection 517.301(1), subsection 517.301(3) does not address solely sales transactions between buyers and sellers, as that paragraph makes it "unlawful and a violation of the provisions of" chapter 517 for any person, "[i]n any matter within the jurisdiction of the department, to knowingly and willfully falsify, conceal, or cover up ... a material fact, make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry." Thus, paragraph (3) shows on its face that it is not limited in application to an offer, sale, or purchase of a security between buyers and sellers, but is broad enough to encompass the filing of false reports with the Department pursuant to statutory requirements. Paragraph (3) is sufficiently broad in scope to make it unlawful and a violation of chapter 517 for Hutton to knowingly and willfully file a false report with the Department reporting Kury's termination, whether or not a person ultimately injured by Hutton's violation of this requirement is in privity with Hutton. Indeed, subsection 517.301(3) contains no mention of transactional privity as a basis for finding unlawfulness and violations of its provisions.
The remaining question is whether Hutton's alleged violation of its statutory duty by knowingly and willfully filing a false report with the Department can legally support liability in damages if such violation is shown to be the proximate or legal cause of the loss allegedly suffered by Appellants. Although the supreme court in Rousseff ruled that "proof of loss causation is not required in a civil securities proceeding under sections 517.211 and 517.301, Florida Statutes" (537 So.2d at 981), that ruling is not dispositive of the causation issue in these cases. Appellants do not rely in these cases on the statutory provisions involved in Rousseff, but instead rely on the generally recognized cause of action for negligence based on a violation of a statutory duty owed for the protection of the plaintiffs. As previously discussed, this cause of action requires proof of proximate or legal causation between the alleged statutory violation and the loss sustained by Appellants.
We conclude that the facts alleged in the complaints, if proven, are sufficient to show that Hutton's statutory violation could be found by a reasonable person to be a proximate or legal cause of Appellants' injuries. The complaints essentially allege that but for Hutton's false and fraudulent reporting of Kury's termination and Hutton's failure to report Kury's deceptive and fraudulent practices as the reason for his termination, action by the Department would have been taken in a timely fashion against Kury to prevent his reregistration and continued ability to further engage in such fraudulent practices through his association with other registered securities dealers, and thereby prevent future clients such as Appellants from "fall[ing] victim to his scheme." Section 517.161 authorizes the Department to deny registration or to revoke, restrict, or suspend any registration previously granted if the Department determines, inter alia, that such associated person has violated any provision of chapter 517 or is guilty of any fraudulent act in connection with a sale of securities.[13] We previously upheld the Department's interpretation of the statutory scheme in chapter 517 as requiring that,
once a dealer terminates the employment of an associated person, the associated person is "terminated" on departmental *1093 records, and must file a new application and again be registered in order to engage in the sale of securities.
Department of Banking & Finance v. Evans, 540 So.2d 884, 885 (Fla. 1st DCA 1989). We cannot say as a matter of law, in view of the facts alleged and shown by the evidence of record, that a jury could not lawfully find that, had Hutton properly reported its termination of Kury and the reasons for such termination, the Department would not have allowed Kury to reregister as an associated person and permit him to continue in the securities business without first instituting an investigation into whether Kury's reregistration should be denied, suspended, or revoked pursuant to section 517.161. Hence, we conclude that Hutton's legal duty under the statutes discussed extended to these Appellants to prevent the alleged losses they have sustained.
At oral argument in this case, Hutton's counsel cautioned that a reversal of these summary judgments would literally "open the floodgates" to lawsuits against securities dealers for the tortious conduct of their former employees by persons having no dealings with the dealer. This warning is premised primarily on a recognition of Hutton's liability to persons not in privity with it. We try to be mindful of the impact and consequences of our decisions in specific cases on the state of the law generally, especially in the face of arguments that a particular decision will vastly expand the scope of existing liability of persons in the position of Appellee. However, we do not believe that our decision in these cases will expand existing law by holding Hutton liable for its knowing and willful violation of a clear and unambiguous reporting requirement that permitted its terminated employee to continue practicing upon members of the investing public the same fraudulent schemes that caused Hutton to terminate his employment. This court should not shut its eyes or look askance at a securities dealer's knowing and willful filing of false reports with the Department in violation of a clear statutory duty solely for the purpose of circumscribing the scope of that dealer's potential liability to persons not in privity with it, if it is made apparent that the dealer's failure to comply with the statute caused the type of injury to future investors that the statute was designed to prevent. We adamantly reject the notion that Hutton neither could nor should have foreseen that an injury of this nature could occur to persons in Appellants' position as a consequence of its filing false information in the report of Kury's termination with the Department. Securities dealers such as Hutton can limit the scope of their exposure and adequately protect themselves from potential liability for claims founded on false reporting by persons not in privity with them simply by being truthful in the reports that they file with the Department. Moreover, the requirement that such plaintiffs prove a knowing and willful violation of the statute and that the dealer's violation thereof was a proximate or legal cause of the plaintiffs' damages is a very real limitation on the scope of such liability.
To summarize, we hold that the facts shown in these cases by Appellants' allegations in the complaints and responses to requests for discovery asserting Hutton's violation of the statutory reporting requirements are legally sufficient to show the existence of a legal duty owed by Hutton to Appellants. It should be noted, however, that we pass no judgment on the credibility or probative value of any evidence that may be presented, or on whether Hutton's breach of the statutory duty was in fact knowing and willful and was the cause of Appellants' alleged damages. We hold only that Hutton failed on its motions for summary judgment to establish as a matter of law that Hutton owed no legal duty of care to Appellants with respect to the losses they allegedly sustained under the facts and circumstances shown. The final determination of such factual issues must await trial. Accordingly, the summary final judgments are reversed and these causes are remanded for further proceedings.
REVERSED AND REMANDED.
BARFIELD and MICKLE, JJ., concur.
NOTES
[1] Subsection 517.021(7), Florida Statutes (1983) defines "dealer" as:

any person, other than a salesman registered under this chapter, who engages, either for all or part of his time, directly or indirectly, as broker or principal in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.
Other than the substitution of the phrase "associated person" for "salesman," this definition is carried forward in subsection 517.021(6)(a), Florida Statutes (1991).
[2] Subsection 517.021(4), Florida Statutes (1983), defines "associated person" as:

any partner, officer, director, or branch manager of a dealer or investment adviser or any person occupying a similar status or performing similar functions or any natural person directly or indirectly controlling or controlled by such dealer or investment adviser, other than an employee whose function is only clerical or ministerial.
[3] The summary judgments were granted on the facts shown by the allegations in the complaints and various responses to discovery requests.
[4] Appellee, Shearson Lehman Hutton, Inc., acquired the assets and liabilities of E.F. Hutton & Co., Inc., by corporate merger.
[5] The corporate promissory notes were made by Kury Financial Planning Group, Inc. Kury was the sole shareholder and a director of this corporation.
[6] The recommended order entered by a hearing officer with the Division of Administrative Hearings in the administrative proceeding to discipline Kury contains a finding that by the time Kury left his employment with Hutton, he had borrowed approximately $327,172 from some 17 different clients.
[7] The hearing officer found that Kury's activities constituted, at least in part, a "pyramid" or "ponzi" scheme, that is, a scheme in which new investor funds are used to pay earlier investors so that, but for the infusions of new capital, the earlier investors cannot be paid off.
[8] Because Appellants presented the issues of common law duty and statutory duty separately, we have addressed them separately. We would point out, however, that the violation of a duty created by statute is recognized at common law as satisfying the duty of care requirement in a negligence action, provided the injured party is in the class the statute seeks to protect and the injury suffered is the type the statute was enacted to prevent. See McKinney v. Adams, 68 Fla. 208, 66 So. 988 (Fla. 1914); deJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198 (Fla. 1973). See also Trianon Park Condominium Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 925 (Fla. 1985) (Ehrlich, J., dissenting).
[9] This provision is now located in subsection 517.12(12)(b), Florida Statutes (1991).
[10] Appellants also argue on appeal that Hutton never "properly terminated" Kury's employment in accordance with the requirements of rule 3E-600.08(2) and therefore, pursuant to that rule, Hutton continued to be responsible for Kury's acts, practices, and conduct after he left Hutton's employment. The trial court did not rule on this contention, and we do not now consider it.
[11] The legislature recently confirmed this purpose by changing the title of chapter 517 to the "Florida Securities and Investor Protection Act." See ch. 85-165, § 1, at 1107, Laws of Fla.
[12] Subsection 517.241(2) provides that, "[N]othing in this chapter shall limit any statutory or common-law right of any person to bring any action in any court for any act involved in the sale of securities... ." Similar provisions in slightly different words are carried forward in section 517.241, Florida Statutes (1991).
[13] After it was advised of Kury's activities, the Department did, in fact, revoke Kury's registration because of the fraudulent acts and conduct alleged in this case.