**SHIELDS & COMPANY, Petitioner(s),**

v.

**Jean G. BRIGHT, etc., Respondent(s).**

**No. 8:01CV2067T17MAP.**

United States District Court,
M.D. Florida,
Tampa Division.

March 28, 2003.

Joseph C. Coates, III, Jon Andrew Jacobson, Greenberg Traurig P.A., West Palm Beach, for Shields & Company, plaintiff.

Joel A. Goodman, Stephen Craig Krosschell, Goodman & Nekvasil, P.A., Clearwater, for Jean G. Bright, individually and in her capacity as Personal Representative for the Estate of William L. Bright, defendant.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on:

Dkt. 20 Motion for Summary Judgment

Dkt. 21 Response

Dkt. 10 Transcripts (Vols.I–VI)

Dkt. 23 Motion to Confirm Arbitration Award

Dkt. 26 Response

Petitioner requests the entry of final summary judgment on its motion to vacate the National Association of Securities Dealers, Inc.'s arbitration award in favor of Respondents because there is no genuine issue of material fact and Petitioner is entitled to judgment as a matter of law.

## I. Background Facts

William and Jean Bright became clients of Brian Cataldo when he was an insurance agent with Prudential Insurance and Financial Services. The Brights were elderly, and not sophisticated investors. In 1997, Brian Cataldo recommended an investment in First American Capital Trust (FACT) to Respondents, and they purchased it. The investment was a promissory note with a nine-month maturity date that paid interest at a rate that was higher than the prevailing market. The note had various renewal options (V.I, p. 105). Brian Cataldo received a commission for the sale of FACT (V.I, p. 106). At that time, Brian Cataldo did business through a company called Financial Plus, a master agent, who actually did the business with FACT. (V. I, p 89). After Brian Cataldo left Prudential, he was self-employed for a period of time, then he was hired by Petitioner Shields & Company in January, 1999 (V.I, pp. 88–89). Brian Cataldo remained employed by Shields & Company until November, 1999 (V.I, p. 97). During that time, the Brights remained clients of Brian Cataldo. Mr. Bright did not open an account with Shields & Co. The FACT investments were not made through a Shields account. Mrs. Bright did open a non-discretionary account with Shields & Co., but the FACT investments were not

put within it. At the arbitration hearing, witnesses testified that Brian Cataldo was not permitted to sell FACT, and Shields told Cataldo that alternative investments should be suggested to replace that investment (Dkt.1, Exh. B, p. 13). Brian Cataldo testified that he was never told not to sell FACT.

Shields & Co. hired Brian Cataldo after investigating his background and with the knowledge that he had two prior customer complaints. Brian Cataldo had an office at Shields & Company and also at his home. Brian Cataldo did not receive his NASD registration until May, 1999, although he began working for Shields and receiving commission income from securities transactions in January, 1999. FACT went bankrupt in 1999, and the Brights lost their investment. Respondents filed a claim against Petitioner, which was arbitrated, resulting in an award to Respondents.

## II. Petitioner's Motion

### A. The Award

The arbitration award entered on September 20, 2001 states:

> Respondent was negligent, breached its fiduciary duty to Claimants William Bright and Jean Bright, and violated Florida Statutes sections 517.12(1), 517.12(11), 517.07(1), 517.012(5) and Rules 3E–600.002(2) and 3E–600.008(5), FLA Admin. As such, Respondent is liable and shall pay to Claimants William Bright and Jean Bright compensatory damages in the sum of $155,334.25, pre-judgment interest specifically excluded.

> Respondent violated Florida Statutes sections 517.12(1), 517.07(1), 517.12(5), 517.12(11), Rules 3E–600.002(2) and 3E–600.008(5), FLA Admin., and 777 So.2d 1144 (Fla. 3d DCA 2001). As such, respondent is liable and shall

pay to Claimants William Bright and Jean Bright punitive damages in the sum of $50,000.

For ease of reference, the Court includes the following:

Florida Statute 517.07(1) states: It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter.

Florida Statute 517.12 states, in pertinent part: (1) No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person is registered with the department pursuant to the provisions of this section. The department shall not register any person as an associated person of a dealer unless the dealer with which the applicant seeks registration is lawfully registered with the department pursuant to this chapter.

(5) No dealer or investment adviser shall conduct business from a branch office within this state unless the branch is registered with the department pursuant to the provisions of this section. (11) If the department finds that the applicant is of good repute and character and has complied with the provisions of this chapter and the rules made pursuant hereto, it shall register the applicant. The registration of each dealer, investment adviser, and associated person will expire on December 31, and the registration of each branch office will expire on March 31, of the year in which it became effective unless the registrant has renewed its registration on or before that date. Registration may be renewed by furnishing such information is the department may require, together with

payment of the fee required in subsection (10) for dealers, investment advisers, associated persons, or branch offices and the payment of any amount lawfully due and owing to the department pursuant to any order of the department or pursuant to any agreement with the department. Any dealer, investment adviser or associated person registrant who has not renewed a registration by the time the current registration expires may request reinstatement of such registration by filing with the department, on or before January 31 of the year following the year of expiration, such information as may be required by the department, together with payment of the fee required in subsection (10) for dealers, investment advisers, or associated persons and a late fee equal to the amount of such fee. Any reinstatement of registration granted by the department during the month of January shall be deemed effective retroactive to January 1 of that year.

Florida Administrative Code Rule 3E–600.002(2) provides:

A dealer or investment adviser shall be responsible for the acts, practices, and conduct of his registered associated persons in connection with the purchase and sale of securities or in connection with the rendering of investment advice until such time as they have been properly terminated as provided in Rule 3E–600.008.

Rule 3E–600.008(5) states:

A dealer or investment adviser shall be responsible for the acts, practices, and conduct of their registered associated persons in connection with the purchase and sale of securities or in connection with the rendering of investment advice until such time as they have been properly terminated as provided in this Rule; and such

dealer or investment adviser may be subject to assessment under Section 517.12(11), F.S., for such associated persons as have been terminated but for whom the appropriate termination notices have not been filed at date of license renewal.

In addition the Court notes that *Ward v. Atlantic Security Bank,* 777 So.2d 1144 (Fla. 3d DCA 2001), is a case in which the Third District Court of Appeal of Florida held that a summary judgment in favor of the defendant bank was reversed and remanded. The Third District Court of Appeal found that: 1) there were genuine issues of material fact as to whether the bank concealed negative information from the stockholder which resulted in a loss; 2) there was a genuine issue of material fact as to whether the bank's statements to the stockholder constituted "investment advice" for purposes of the securities fraud statute; 3) the bank owed the stockholder a fiduciary duty of loyalty and care; and 4) there were genuine issues of material fact as to whether the bank breached its fiduciary duty. The complaint in *Ward* was based on common law fraud, securities fraud under section 517.301, *Florida Statutes,* and breach of fiduciary duty.

In *Ward,* the Third District Court of Appeals notes that a securities fraud claim under section 517.301 may also be brought for fraud "in connection with the rendering of any investment advice." In addition, as to the breach of fiduciary duty, the Court states that in general, a stockbroker must deal with its clients in good faith, and owes them a fiduciary duty of loyalty and care. *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1049 (11th Cir.1987). Those duties include the following:

1) the duty to recommend [investments] only after studying it sufficiently to become informed as to its nature, price and financial prognosis; 2) the duty to perform the customer's orders promptly in a manner best suited to serve the customer's interests; 3) the duty to inform the customer of the risks involved in purchasing or selling a particular security; 4) the duty to refrain from self-dealing...; 5) the duty not to misrepresent any material fact to the transaction; and 6) the duty to transact business only after receiving approval from the customer. (Citation omitted).

The Arbitration Award (Dkt.6, Exh. 1) states that the Claimants are pursuing claims for: violation of Florida Securities and Investor Protection Act sections 517.12(5) and 517.301; violation of federal securities laws; breach of contract; common law fraud; constructive fraud through breach of fiduciary duty; negligence and gross negligence; unjust enrichment; and, violations of and conspiracy to violate the Florida RICO statute.

## B. Scope of Review and Petitioner's Argument

The Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., and the Florida Arbitration Code, Fla. Stat. Sec. 682.01, et seq. recognize the following four statutory grounds for vacating an arbitration award: 1) the award was procured by fraud; 2) the award represents evident partiality by the arbitrator; 3) the arbitrators, without just cause, refused to postpone the hearing or to hear evidence; and 4) the arbitrators exceeded their powers. In addition, the Eleventh Circuit Court of Appeals recognizes the following additional grounds for vacating an arbitration award: 1) the award is "arbitrary and capricious"; 2) the award violates public policy, and 3) the arbitrators manifestly disregarded the law. *See Scott v. Prudential Secs., Inc.* 141 F.3d 1007 (11th Cir.1998).

The Eleventh Circuit Court of Appeals has held that when an arbitration award sets forth its rationale, courts are

prohibited from going beyond the four corners of the award, and are limited to the specific rationale asserted in the award itself:

> When no rationale is given for a lump-sum award, the reviewing court first reviews the arbitration award the reviewing court first reviews the arbitration award to determine if there is a rational basis for the award. "The onus is on the party requesting the vacatur...to refute every rational basis upon which the arbitrator could have relied." So long as there is a "proper basis" for the award, the party seeking vacatur is limited to the four narrow bases as grounds for vacating the award. In contrast, when considering an award, such as this one, which is not silent as to its rationale, the reviewing court should not engage in this procedure. Rather, the party seeking vacatur may raise any of the statutory or non-statutory grounds in support of its motion to vacate the award.

*Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 779 (11th Cir.1993) (quoting *Robbins v. Day*, 954 F.2d 679, 684 (11th Cir.), *cert. denied*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992)).

■ Manifest disregard of the law requires that: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and 2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 668–669 (6th Cir.2000). A misapplication of well defined and explicit legal principles does not constitute manifest disregard.

The Court may vacate an arbitration award that is arbitrary and capricious only if "a ground for the arbitrator's decision cannot be inferred from the facts of the case." *Lifecare Intl. v. CD Medical*, 68 F.3d 429, 434 (11th Cir.1995).

■ The public policy exception is implicated when enforcement of the award compels one of the parties to take action which directly conflicts with public policy. *Delta Air Lines, Inc. v. Air Line Pilots Asso., Intl.*, 861 F.2d 665, 671 (11th Cir.1988).

Petitioner contends that rescission is the only remedy for violations of Florida Statute 517, buyer/seller privity is absent in this case and therefore there can be no claim under F.S. 517, and punitive damages cannot be awarded without a written opinion identifying the basis for the award. Petitioner requests that the Court vacate the award to the extent that it finds that Shields & Company violated F.S. 517, and to the extent that it awards punitive damages.

## III.   Respondents' Response

At the outset, the Court notes that the complete Transcript of the arbitration proceeding was filed, and the Court has considered the Transcript.

Respondents argue that the award of punitive damages is not based solely on any violation of F.S. 517., but is based on Florida's administrative rules, and on claims for common law fraud and breach of fiduciary duty. Respondents argue that the most plausible explanation of the award is that the arbitrators found that the violations of the Florida Securities Act and the Florida Division of Securities administrative rules constituted gross negligence *per se* and breach of fiduciary duty or fraud, warranting punitive damages. Respondents argue that Florida law does not clearly preclude punitive damages for Florida Securities Act violations, and the evidence presented supports the award. Respondents further argue that Petitioner has not established that the arbitrators were subjectively aware of the proper legal standard, and disregarded it in awarding punitive damages. Respondents further argue that Florida Statute 768.737 became effective after the last transaction in this

case in August, 1999, it does not apply to this case, and it was not cited to the Panel before the award was rendered.

## IV. Discussion

### A. Florida Statute 517

Petitioner seeks the vacatur of the award of damages for violation of Florida Statute 517, arguing that rescission is the only remedy available. *Ainsworth v. Skurnick*, 960 F.2d 939 (11th Cir.1992). In *Ainsworth*, Plaintiff arbitrated a claim for violation of F.S. 517.12 before an NASD panel. The panel found negligence, but awarded no damages. The district court vacated the arbitration judgment as being in manifest disregard of the law, and awarded mandatory damages under F.S. 517.211. On appeal, the decision was upheld because the panel's decision was "arbitrary and capricious." At that time "manifest disregard of the law" was not a viable basis to vacate an award. An award is arbitrary and capricious only if "a ground for the arbitrator's decision cannot be inferred from the facts of the case."

In *Ainsworth*, there were two appeals of the award. In the first, the district court remanded to the panel, stating the decision was vague, cursory and without adequate explanation of how the decision was reached. The district court instructed the panel that statutory damages were mandatory when one violates F.S. 517.12, yet the panel found the presence of negligence, but found the Claimant sustained no damages. The second time around the district court awarded damages, and the Eleventh Circuit Court of Appeals found the panel decision was arbitrary and capricious, and therefore the award did not have to be enforced. The Court states:

> We have to assume that the arbitrators' decision was arbitrary for two reasons: first, it was a reasonable interpretation of the statute made by the district court in questioning the vagueness of the pan-

el's first decision; and second, the district court told them what the law was, and their second award does not indicate that they differ with the point nor does it give any reason for not awarding damages. Since they knew the law required damages, their refusal to grant damages is clearly arbitrary. There was no reasonable basis upon which the panel may have acted...In this case, it is not a question of deciding the law and getting it wrong or for some reason disregarding the law. The decision was simply an apparent arbitrary and capricious denial of relief with no factual or legal basis.

Petitioner further argues that a statutory claim under F.S. 517 cannot be brought as a common law negligence claim. *E.F. Hutton v. Rousseff*, 537 So.2d 978 (Fla. 1989). In that case, the Supreme Court of Florida states:

> The Florida statutes...are far more restrictive. Because section 517.211 contains an express civil liability provision, Florida courts need fashion no court-made civil right. They need only follow the clear language of the statute. Section 517.211 says that if a seller (or buyer) is untruthful in a sale, the buyer (or seller) can rescind the transaction and get his money back. This provision applies to a far more narrow group of activities than does rule 10 b–5. Buyer/seller privity is required. The remedy is restricted to the consideration paid. The effect of section 517.211 is similar to that of federal section 12(2), except that whereas 12(2) protects only buyers, section 517.211 protects both buyers and sellers.

> Because of the limited scope of the parties, activities and remedies embraced by this common law cause of action, its requirements are far less restrictive than those of deceit. "The elements of rescission, in a nutshell, are 'misrepre-

sentation' of a 'material' 'fact' on which the buyer justifiably relied...Loss causation has never been required there." "The buyer need not show any causal connection between the misrepresentation and his damages, indeed, he need not even show that he has been damaged."

Petitioner argues that the panel was informed that rescission is the only permissible remedy applicable, was further informed that Shields did not sell FACT, and in the absence of buyer/seller privity, there is no possible claim under F.S. 517.12.

Respondents argue that this Court cannot review any factual determination the panel may have made to support a finding that Shields was a seller liable under the Florida Securities Act. Respondents further argue that the arbitrators' factual findings are well-supported by both the facts and the law. Respondents argue that Shields can be found to be a seller because both those who pass title and those who solicit or recommend the sale are sellers for purposes of the securities laws. Respondents argue that under F.S. 517.211(1), liability extends to every "person making the sale," including to persons who participate in the sale by recommending and soliciting it. Respondents rely on *Ward v. Atlantic Security Bank*, 777 So.2d 1144 (Fla. 3d DCA 2001), in which a bank could be found liable under the Florida Securities Act for faulty investment advice not to sell a security, even if the bank did not own the security and no security sale occurred. In that case, it was the retention of the security rather than a sale that was the basis for the claim.

Respondents also argue that they alleged that Shields did sell FACT and Shields is responsible for its broker's conduct, based on traditional agency principles, respondeat superior and apparent authority. In other words, Respondents were in privity with Shield's associated person, Cataldo, and therefore Respondents were in privity with Shields.

A. Breach of Fiduciary Duty

Courts have imposed fiduciary duties where a broker served as an investment counselor. Where a broker has acted as an investment advisor, and if the customer has invariably followed the broker's advice, this is an indication that the broker exercises functional control of the account, and that the broker/customer relationship is fiduciary. Courts have considered a customer's age, education, intelligence and investment experience in making the determination. The determination of the presence of fiduciary duty is one that must be made on a case-by-case basis, after evaluating the facts in the customer relationship.

■ The Panel heard testimony from the Respondents that they were elderly, their investment experience was limited, their education was limited, and they relied on Brian Cataldo, a registered representative of Shields. The fact that Mrs. Bright had a nondiscretionary account with Shields is not dispositive. There is a basis for the Panel to find the presence of a fiduciary relationship, and to conclude that the fiduciary relationship was breached by Petitioner.

B. Negligence

■ Respondents presented both common law and statutory causes of action. The violation of a duty created by statute is recognized at common law as satisfying the duty of care requirement in a negligence action, provided the injured party is in the class the statute seeks to protect, and the injury suffered is the type the statute was enacted to prevent. *Trianon Park Condominium Assn. Inc. v. City of Hialeah*, 468 So.2d 912, 925 (Fla.1985).

In *Twiss v. Kury*, 25 F.3d 1551 (11th Cir.1994), the Eleventh Circuit Court of Appeals reversed the finding of the district court that Defendant Hutton owed no duty under Florida law to investors in that case, and therefore the case was remanded on the negligence claim. The *Twiss* court noted that under the common law, a person has no duty to control the conduct of another or to warn those placed in danger by such conduct unless a special relationship exists between the defendant and the persons whose behavior needs to be controlled or the foreseeable victim of the conduct. The Court cited to *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So.2d 1085 (Fla. 1st DCA 1993). In *Palmer*, a case involving the same facts as *Twiss*, the Court recognized that Kury was not employed by Hutton at the time the alleged injuries occurred to those investors, that the investors never were clients of Hutton and did not deal with Kury when he worked for Hutton. The *Palmer* court found that Florida Statute subsections 517.301(3) and 517.12(11) and rule 3E–600.08 of the Florida Administrative Code, when read *in pari materia*, imposed legal duties on Hutton that supported a claim for negligence. The *Palmer* court further reasoned that the investors were within the class of persons those statutory provisions were designed to protect because they were investors in securities and dealt with Kury as a registered securities broker. The *Palmer* court found that the investors suffered the type of injury the statutes were designed to prevent because they lost moneys invested as a consequence of the fraudulent acts of the reregistered broker Kury.

The *Palmer* court distinguished *Rousseff*, finding that the appellants did not rely on the statutory provisions involved in that case. The Court also said "Nothing in the *Rousseff* opinion purports to pass on the statutory provisions in subsection 517.301(1), the section relied by appellants in these cases." That opinion does not purport to hold that the remedies provided in section 517.211 are exclusive of all other remedies recognized by law, nor is it likely that the court would have so held in view of the statutory and common law remedies provided or preserved to investors in other sections of Chapter 517. *Palmer*, 622 So.2d at 1091–92.

The facts of this case show that Brian Cataldo was not properly licensed, and that Shields did not prevent him from working as a registered representative of Shields until he was properly licensed. In addition, there is a basis in the facts to show that Shields did not effectively supervise its representative. At the hearing, Shields denied any knowledge of Cataldo's sale of FACT, but had Shields supervised Cataldo's activities, Shields could have either stopped the sales or terminated Cataldo.

■ This case has presented to the Court both statutory and common law causes of action that have been intertwined. The Court interprets the Arbitration Award to mean that there was a statutory violation that satisfied the duty of care requirement for a finding of negligence. The Court recognizes that Petitioner disagrees as to the type of damages awarded for that negligence, but the Court concludes that there is not a manifest disregard of the law or an arbitrary and capricious decision in that finding. The Court denies the Motion for Summary Judgment as to the vacatur of an award pursuant to Ch. 517, *Florida Statutes*.

C. Punitive Damages

■ The substantive law applied to the conduct of the parties determines whether an award of punitive damages is warranted, but it does not deprive the arbitrators of their authority to award punitive damages. *See Davis v. Prudential*, 59 F.3d

1186 (11th Cir.1995). The Supreme Court held in *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) that if the contracting parties agree to include claims for punitive damages in the issues to be arbitrated, the Federal Arbitration Act ensures that the agreement will be enforced, even if a rule of state law would otherwise exclude the claims from arbitration.

This case was brought under NASD arbitration, and the Court concludes the award of punitive damages is within the broad remedial powers of the Panel. Respondents included a request for punitive damages in their Statement of Claim, pursuant to their arbitration agreement. The Arbitration Award identifies the basis for the award, and the Court denies the Motion for Summary Judgment as to the award of punitive damages.

Dkt. 23 Motion to Confirm Arbitration Award

Dkt. 26 Response

All of the issues raised in the initial Petition to Vacate the Award (Dkt.1) were raised in the Motion for Summary Judgment which the Court has denied. After consideration, the Court **grants** the Motion for Confirm the Award. Accordingly, it is

**ORDERED** that the Motion for Summary Judgment (Dkt.20) and the Petition to Vacate the Award (Dkt.1) are **denied**. The Court previously partially vacated the Award as to the issue of attorney's fees (Dkt.25). The Motion to Confirm the Award is **granted** in all other respects, and the Clerk of Court shall enter judgment for Respondents.