Daniel BELTRAM, et al., Plaintiffs,

v.

SHACKLEFORD, FARRIOR, STALLINGS & EVANS, etc., Defendant.

No. 86–428–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

Oct. 17, 1989.

George W. Phillips, Tampa, Fla., for plaintiffs.

Charles L. Weissing, Kass, Hodges & Massari, Tampa, Fla., for B. Mack Devine.

Marion P. McCulloch, Allen, Dell, Frank & Trinkle, Tampa, Fla., for Shackleford, Farrior, Stallings & Evans.

Edward O. Savitz, Bush, Ross, Gardner, Warren & Rudy, Tampa, Fla., for Price, Waterhouse & Co.

ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on the following:

Dkt. 54 Memorandum in support of Motion for Summary Judgment

Dkt. 56 Affidavit

Dkt. 57A Memorandum in opposition to Motion for Summary Judgment

Dkt. 59 Affidavit

Dkt. 65 Supplemental Memorandum in opposition to Motion for Summary Judgment

Dkt. 66 Deposition

Dkt. 68 Motion for Oral Argument

Dkt. 69 Supplement to Memorandum in Support of Motion for Summary Judgment

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at p. 274. The Court is satisfied that no factual dispute remains which precludes the entry of summary judgment.

Count I Violation of Section 517.301, *Florida Statutes*

■ It is uncontroverted that Defendant Shackleford, Farrior, Stallings and Evans is not in privity with Plaintiffs. The Florida Supreme Court has held that to prevail on a claim made under the Florida Securities and Investor Protection Act, Sec. 517.-211, *Florida Statutes,* buyer/seller privity is required. *E.F. Hutton, Inc. v. Rousseff,* 537 So.2d 978, 981. (Fla.1989).

In *E.F. Hutton,* the Florida Supreme Court held the effect of Section 517.211 is similar to that of Section 12(2) of the Securities Act of 1933, "except that whereas Sec. 12(2) protects only buyers, Section 517.211 protects both buyers and seller." 537 So.2d at 981.

In *Wilson v. Saintine Exploration and Drilling Corp,* 872 F.2d 1124 (2d Cir.1989), the Second Circuit Court of Appeals applied *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) to claims under Sec. 12(2) and held that collateral participants who do not solicit sales cannot be held liable, nor could they be held liable as aiders and abetters. This Court recognizes that *Pinter v. Dahl* has narrowed the scope of the category of persons who may be liable under Section 12(1) and Section 12(2) of the Securities Act of 1933.

There has been no showing that Defendant solicited the subject sale of securities for its financial gain. The Court finds that, as a matter of law, Defendant is not a seller of the securities at issue, or an agent of the seller. The Court grants summary judgment to Defendant as to Count I.

Count II

Plaintiffs concede that Defendant is entitled to summary judgment as to Count II as a matter of law. (Dkt 57A, p. 8).

Count IV Violation of 10b–5

■ In order to prevail on a 10b–5 claim, Plaintiffs must prove (1) the false representation of a material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied and (4) that proximately caused the plaintiff's damages. *Diamond v. La-Motte,* 709 F.2d 1419 (11th Cir.1983)

Defendants contend that (1) Devine's bonus could not have been the proximate cause of Plaintiffs' investment loss, and (2) the disclosure contained in the Private Placement Memorandum regarding the J.A.P. litigation was not fraudulent.

Plaintiffs respond that they relied on the information omitted from the prospectus as

to Devine's bonus, and the disclosure of the J.A.P. litigation, to their detriment, and they would not have invested otherwise.

### A) Devine's Bonus

Plaintiff Decker testified at deposition that he would not have invested in Key stock if the bonus had been disclosed because he would have concluded that Devine was overpaid. (Decker Deposition, p. 43). Decker also testified that the amount of the bonus "was not significant based on Key's operations" and "Key would have failed whether or not Devine received the bonus." (Decker Deposition, p. 43). Defendant also contends that a bonus of less than one cent per share paid in stock or used to purchase stock could not cause any cash drain which would conceivably have caused Key's business failure.

Plaintiffs argue that critical questions remain as to the credibility, motive, intent and state of mind of Defendant and Defendant's witnesses. Plaintiffs believe that, based on the evidence in the record, a jury may reasonably decide that Key failed, and Plaintiffs lost their investment, because Key's chief operating officer was to receive a $100,000 yearly bonus regardless of company performance.

Devine testified on deposition that he was to receive $200,000 in yearly compensation, $100,000 in base salary and at a minimum $100,000 as a bonus. Devine testified that the first bonus was due May 30, 1983. Devine was paid $40,000 for the bonus in 1983, and later in 1985 was paid $60,000 in stock for the remaining amount due for 1984. No other cash bonuses were paid. Additional bonuses for subsequent years were paid in stock. (Devine Deposition, pp. 32–33). Since Key entered Chapter 11 proceedings, a salary of $150,000 has been authorized by the Bankruptcy Judge, and Devine has taken, in his discretion, $75,000.

Devine further testified on deposition that Key had three primary problems that precipitated the filing of Chapter 11 proceedings. These are: (1) In 1985, the company's major supplier put Key on a COD basis; (2) the J.A.P. litigation resulted in a $250,000 judgment Key was required to pay; (3) the Florida Department of Law Enforcement sought a criminal indictment for delinquent taxes of $500,000. Further, an anticipated merger with Coastland Corporation of Florida was not consummated. Key filed for bankruptcy in February, 1986. The price of Key's stock declined sharply prior to the bankruptcy filing.

After considering the small amount of cash that was paid out for the bonus, and the other significant business problems which confronted Key at the applicable time, the Court concludes that no factual dispute remains for resolution at trial. At trial Plaintiffs would have the burden of establishing that the bonus proximately caused the investment loss. If the $40,000 paid to Devine had not been paid, the Court cannot see how there would have been any impact on the other problems which faced Key at that time. When Mansfield put Key on a COD basis, Key owed Mansfield $300,000, and a public announcement was made that the company's major supplier would only sell to Key on terms. The J.A.P. judgment was $250,000. Key owed $500,000 in back taxes, and an anticipated capital infusion was not realized. These are objectively verifiable facts which do not require the judgment of credibility. The Court grants summary judgment to Defendant as to this issue.

### B) J.A.P. Litigation

Key's 1982 SEC Form 10k report contains the following disclosure:

As of March 31, 1982, Key Air Services, Inc, a wholly owned subsidiary of Key Energy, was in default of an aircraft lease agreement entered into in September, 1981. The aircraft was returned to the lessor in March 1982 and Key Energy received notice from the lessor that this was not an acceptable termination of the lease. The lease agreement permits that as a remedy to default, the lessor can recover an amount equal to the unpaid balance due and to become due during the term of this agreement, totalling approximately $600,000 over a five-year period. The Company and the lessor are

presently attempting to sell the aircraft and management is of the opinion that its fair market value is in excess of $600,000 and the ultimate resolution will not have a material effect on the financial position or results of operations of the Company.

The March 1983 Private Placement Memorandum contained the following disclosure:

In February, 1983 J.A.P. Incorporated filed suit against the Corporation and its wholly-owned subsidiary, Key Air Service, Inc., in the Hillsborough County Circuit Court, Case No. 83–2229, Div. W, seeking damages for an alleged breach of an aircraft lease. The aircraft was returned to the plaintiff in March, 1982 and has subsequently been sold. Management believes that it has valid defenses to the suit, and, in all events, is of the opinion that the ultimate resolution of this litigation will not have a material adverse effect on the Corporation's financial condition.

Plaintiffs claim that at the time of the preparation of the Private Placement Memorandum, Defendant knew that Key would lose the case. Plaintiff Decker testified that the sole support for this allegation was a conversation he and Plaintiff Noble had with J.A.P.'s attorney after the case was tried, who said that "Shackleford had not done its homework". (Decker Deposition, p. 110). The only other support brought forth for the allegation of fraudulent intent is that a judgment was entered against Key.

The Court notes that questions of intent are usually for the jury. However, the standards for summary judgment require that some facts be brought forth to establish the presence of a factual dispute. Plaintiffs maintain that since Key lost the litigation, and Defendant's assessment of the outcome of the then-pending litigation was not correct, they have brought forth sufficient facts to establish a factual dispute as to fraudulent intent. The Court does not agree. The record is bare of facts which tend to establish fraudulent intent. The Court grants summary judgment to Defendant as to this issue. Accordingly, it is

ORDERED that Defendant's motion for summary judgment is granted; and the Clerk is directed to enter a final judgment of dismissal. The motion for oral argument is denied.

DONE and ORDERED.