# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00646-SCT

*D. LANCY ALLYN, M. D.; DARYL BEHRENS; RICHARD BROWN; CHARLOTTE BROWN; E. LEE BUTLER, INDIVIDUALLY AND AS TRUSTEE OF THE E. LEE BUTLER, P. A., PROFIT SHARING TRUST; ELIZABETH BUTLER; JAMES CASTO; GUY E. EVANS; OPAL HERRIN; J. MYRON LORD, M. D.; SHANE MOORE; STEPHEN PATTERSON; J. RAUL SALAS, M. D., AS TRUSTEE OF THE J. RAUL SALAS, M. D., INC. DEFINED BENEFIT PENSION TRUST*

*v.*

*WILLIAM C. WORTMAN; RICHARD J. LAWRENCE; THOMAS A. LETTERO; CHARLES A. BREWER; ROBERT K. GRAY; JAMES S. MUSH; RENATE SCHIFF; JACK R. CRAWFORD; JOHN H. HARVEY; JOHN G. KINNARD & COMPANY, INC.; THOMAS JOSEPH MULVANEY; DANIEL RAYMOND SASS; LEE SCOTT FELICETTA; FRANCIS WILLIAM BRAUN; ARTHUR JUDE KEARNEY; THOMAS EDGAR MOORE; ROBERT SHELDON SPONG; K. EDWARD ELVERUD; AND PATRICK M. SIDDERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/96 |
| TRIAL JUDGE: | HON. ROBERT LEWIS GIBBS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | T. JACKSON LYONS |
| ATTORNEY FOR APPELLEES: | ALEX A. ALSTON, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 4/9/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/29/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On September 26, 1995, the Plaintiffs filed their Complaint in the Circuit Court of Hinds County. The Complaint alleged violations of the securities laws of the United States, Mississippi, Florida, and California by John G. Kinnard & Company,[1] certain individuals related to that entity, and individuals related to the entity which became known as Palace Casinos, Inc. The Complaint also alleged that the Palace Defendants were responsible for the destruction of the casino as an ongoing business and are liable directly to shareholders under Utah law.

¶2. Both the Kinnard Defendants and the Palace Defendants filed separate motions to dismiss for failure to state a claim upon which relief could be granted. The motions asserted that the Complaint did not state cognizable claims under federal, Mississippi, Florida or California securities law. Furthermore, the motions stated that the Complaint did not meet the requirements of the federal or state statutes, that each claim was barred by the applicable statute of limitations, and that the document in question, a Private Placement Memorandum ("PPM"), was not misleading when read in its entirety.

¶3. The trial court granted both motions to dismiss from which the Plaintiffs appeal. Since the appeal was filed, three Appellants, A.J. Acker, Linda Gazie, and Harvey Young, have settled their claims and are no longer parties to this appeal. Therefore, the claims asserted by the Appellants in their principal brief regarding federal securities law and the Florida common law of fraud are moot. Furthermore, the remaining Appellants have conceded the issues of federal law as decided by the trial court.

## STATEMENT OF THE ISSUES

**I. WHETHER THE TRIAL COURT HAD PERSONAL JURISDICTION OVER THE PARTIES AND SUBJECT MATTER JURISDICTION OVER THEIR CLAIMS AND DEFENSES.**

**II. WHETHER THE INVESTORS' CLAIMS BASED UPON THE SECURITIES LAW OF CALIFORNIA ARE BARRED BY THAT STATUTE'S LIMITATIONS PROVISION.**

**III. WHETHER THE ANTI-FRAUD PROVISIONS OF CALIFORNIA'S, FLORIDA'S, AND MISSISSIPPI'S SECURITIES STATUTES APPLY TO SALES OF COMMON STOCK BY NON-DEFENDANT SELLERS WHERE THE PRIVATE PLACEMENT MEMORANDUM PREPARED BY THE DEFENDANTS/APPELLEES TO ISSUE PREFERRED SHARES ALLEGEDLY MATERIALLY MISREPRESENTED THE INFORMATION RELIED UPON BY THE INVESTORS.**

**IV. WHETHER THE TRIAL COURT ERRED IN DETERMINING, AS A MATTER OF LAW, THAT THE INFORMATION AVAILABLE TO THE INVESTORS CONTAINED ADEQUATE DISCLOSURES TO INFORM THEM OF THE RISKS IN BUYING STOCK IN PALACE CASINOS, INC.**

**V. WHETHER, UNDER UTAH LAW, THE SHAREHOLDERS HAD STANDING TO**

**SUE THE INDIVIDUALS BELIEVED RESPONSIBLE FOR THE DESTRUCTION AND DEMISE OF THE COMPANY.**

**STATEMENT OF THE FACTS**

¶4. Ward's Oil and Gas, Inc. was incorporated in the State of Utah in 1980. The company later changed its name to Maritime Resorts International, then to Palace Casinos, Inc., the subject of the present action.

¶5. In 1992, Maritime Resorts International (hereinafter "Maritime") began developing a casino project in Biloxi, Mississippi. Maritime acquired barges and an option on dockside space in the Point Cadet area of Biloxi. These assets were acquired through a stock swap with Maritime Group, Ltd., a wholly-owned subsidiary which was to run the casino.

¶6. In order to raise additional capital to build the casino, Maritime decided to issue Preferred Stock through a confidential Private Placement Memorandum (PPM) on May 3, 1993. John G. Kinnard & Co. ("Kinnard"), a Minnesota corporation also registered in Mississippi, handled the underwriting of the new issue of preferred shares.

¶7. The PPM was directed towards wealthy and sophisticated investors with individual annual income greater than $200,000, or over $300,000 with spouse, or with a net worth in excess of $1,000,000. Furthermore, the PPM contained a multitude of warnings regarding the risky and unsure nature of the casino business and the potential loss of any investment in this casino venture. Potential investors were required to complete and sign a subscription agreement and questionnaire which continued to warn of investment risk and questioned the investors' ability to absorb investment loss. Despite the warnings, the stock issuance was successful, and all available shares were purchased. After the issuance, the company filed a registration statement (Form S-1) and Form 10-K with the U.S. Securities and Exchange Commission (SEC) on December 3, 1993, and September 4, 1994, respectively. Both contained significant warnings that the venture wasnot proceeding as planned and that the Company was in trouble.

¶8. Following extensive financial and construction problems, the Palace Casino opened on April 15, 1994. However, the general contractor later filed a lawsuit and a construction lien causing a default under the terms of the casino's mortgage debt agreement with Maritime Group, Ltd. The default was coupled with a $10 million dollar operating loss, and Palace Casinos, Inc. and Maritime petitioned for protection under Chapter 11 in the United States bankruptcy court in Utah. The cases were subsequently transferred to the Southern District of Mississippi.

¶9. The Plaintiffs ("Investors") have brought an action against the Palace Casino Defendants and Kinnard based upon alleged material misrepresentations in the PPM, upon which they relied when purchasing Palace Casino stock. Furthermore, the Investors seek to recover from the Palace Defendants for the destruction of the company under Utah law.

¶10. There are sixteen Investors. Nine are residents of Florida, six are residents of California, and one is from Mississippi. Of the sixteen Investors, only three, Acker, Gazie and Young, purchased the Preferred Shares covered by the PPM issued on May 3, 1993.[2] Ten other Investors did not purchase the Preferred Shares covered by the PPM but allege that they relied on the PPM to purchase shares

of common stock from sellers other than the Defendants. The Investors admit that some shares of common stock were purchased prior to the issuance of the PPM by seven of the Investors. The remaining three Investors, Allyn, Lord and Sallas, did not purchase any stock in reliance on the PPM and join only in the corporate aspect of the suit under Utah law.

¶11. Of the Palace Defendants, Wortman, Lawrence, Schiff, and Mush were not officers or directors of the company when the PPM was issued in May of 1993. Defendant Brewer, the only Mississippi Defendant, and Defendants Gray and Harvey had been directors for the Palace Casino only a few days prior to the issuance of the PPM and had no involvement in its preparation, approval or issuance.

¶12. Following the filing of the Investors' Complaint in the Circuit Court of Hinds County, both sets of Defendants filed motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Miss. R. Civ. P. 12(b)(6). The trial court granted both motions to dismiss. The decision was primarily based on lack of jurisdiction by the trial court, failure to file within the applicable statutes of limitation, and lack of privity with the Defendants. The Investors now appeal to this Court.

## ANALYSIS

¶13. This Court conducts *de novo* review of questions of law raised by Rule 12(b)(6) motions. *Wells v. Panola County Bd. of Edue.*, 645 So.2d 883, 888 (Miss. 1994); *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990); *UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So.2d 746, 754 (Miss. 1987). Well-pleaded facts must be taken as true, and dismissal should be granted only where it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of a claim that entitles him to relief. *Weeks v. Thomas*, 662 So.2d 581, 585 (Miss. 1995); *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss. 1990).

¶14. Since the attorneys for the Defendants wrote the trial court's opinion, as requested by the trial judge, the Investors correctly indicate that the opinion should be viewed with an increased measure of scrutiny. *Kerr-McGee Chem. Corp. v. Buelow*, 670 So.2d 12, 16 (Miss. 1995).

**I. WHETHER THE TRIAL COURT HAD PERSONAL JURISDICTION OVER THE PARTIES AND SUBJECT MATTER JURISDICTION OVER THEIR CLAIMS AND DEFENSES.**

¶15. In its opinion, the trial court states "there is a significant question whether this Court has jurisdiction of the claims asserted in the Complaint." The trial court bases its conclusion on the fact that only one Defendant, Charles Brewer, and only one Plaintiff, Guy Evans, are residents of Mississippi, and the claims of the Mississippi Plaintiff and claims against the Mississippi Defendant are without merit and must be dismissed. Neither the trial court nor the Appellees cite any authority in support of this position. Furthermore, the trial court denies jurisdiction but dismisses the case based on the failure of the Investors to state a claim upon which relief can be granted.

¶16. The trial court does, however, recognize a valid point by noting that there is no evidence that the stock issuance took place in Mississippi or that Plaintiff Evans purchased the stock in Mississippi. Further, Hinds County may not be the ideal forum to hear this cause of action. However, Mississippi

courts may not decline jurisdiction because the cause of action is based on the law of another state. ***Shewbrooks v. A.C. and S., Inc.***, 529 So.2d 557, 561 (Miss. 1988). The Circuit Court of Hinds County, as a court of general jurisdiction, is empowered to hear the claims of foreign plaintiffs consenting to the court's jurisdiction, assuming that proper jurisdiction exists over the defendant(s) and the subject matter. ***Shewbrooks***, 529 So.2d at 560-61.

¶17. Kinnard is registered as a broker-dealer with the Securities Division of the Secretary of State's Office in compliance with Miss. Code Ann. § 75-71-301, subjecting Kinnard to service of process and personal jurisdiction in Mississippi. Miss. Code Ann. §§ 75-71-307, 75-71-701, and 75-71-703 (1991). Through Kinnard, jurisdiction can be exercised over the Palace Defendants, since both groups were responsible for the production of the PPM at issue. In the alternative, jurisdiction could be premised upon the fact that the Palace Defendants operated a casino located in Mississippi which was subject to Mississippi regulations. These facts, taken in concert with a Mississippi Defendant and a Mississippi Plaintiff, establish the 'minimum contacts' necessary to find jurisdiction over the Defendants.

¶18. This assignment of error has no merit. The Hinds County Circuit Court possessed in personam jurisdiction in this case.

## II. WHETHER THE INVESTORS' CLAIMS BASED UPON THE SECURITIES LAW OF CALIFORNIA ARE BARRED BY THAT STATUTE'S LIMITATIONS PROVISION.

¶19. The Investors' claims of misrepresentations are based entirely on the PPM. The trial court concluded that the Investors were put on notice of any misrepresentation by the filing of the registration statements, Forms S-1 and 10-K, with the SEC on December 3, 1993, and September 8, 1994, respectively. The Investors did not file a Complaint until September 26, 1995. For this reason, the trial court held that the Investors' claims were barred by the one-year statute of limitations under federal law, 15 U.S.C. § 77m, and applied this bar to the one-year statute of limitations under California law, § 25506 Cal. Corp. Code.

¶20. The trial court also held that the Investors' claims under federal and California laws must be dismissed for failure to plead facts showing that the claim is timely filed. The trial court supports its decision with the following:

> In other words, plaintiffs are required to plead such facts as the actual time the securities were purchased, the time and circumstances of discovery of the alleged fraud, facts showing that plaintiffs acted with due diligence in attempting to discover any fraud, and the reasons the fraud was not discovered sooner. ***Davidson v. Wilson***, 973 F.2d 1391 (8th Cir. 1992); ***Piper Acceptance Corp. v. Slaughter***, 600 F. Supp. 169 (D. Colo. 1985); ***Southwest Investment, Inc. v. Midland Energy Co.***, 596 F. Supp. 219 (E.D. Mo. 1984); ***In re Longhorn Securities Litigation***, 573 F. Supp. 255 (W.D. Ok. 1983); ***Hardy v. First American Bank, N.A.***, 774 F. Supp. 1078 (M.D. Tenn. 1991). The Court finds that Plaintiffs have wholly failed to meet this basic requirement.

¶21. The Investors argue that they were not put on notice until the bankruptcy filing in December of 1994. Therefore, they assert that their claim was filed within the one-year period. They also contend that Cal. Corp. Code § 25506 requires actual notice to start the running of the statute of limitations,

and any assertion to the contrary would be a disputed question of fact making a Rule 12 dismissal inappropriate. ***Tab Partnership v. Grantland Fin. Corp.***, 866 F. Supp. 807, 810 (S.D.N.Y. 1994).

¶22. It has been held that the one-year statute of limitations under Cal. Corp. Code § 25506 begins to run at the time of actual notice or when the violation should have been discovered in the exercise of reasonable diligence. ***Kramas v. Security Gas and Oil Inc.***, 672 F.2d 766, 770-71 (9[th]Cir. 1982). In addition, the Seventh Circuit held that information contained in filings with the SEC constitute constructive notice "as a matter of law," beginning the running of the statute of limitations in federal cases. ***Eckstein v. Balcor Film Investors***, 58 F.3d 1162, 1168-69, (7th Cir. 1995). Furthermore, a cursory review of the registration statement and Form 10-K reveals statements which should have served to place the Investors on notice as to virtually all of the claims asserted.

¶23. The Investors also argue that their pleadings were sufficient to show that the claim was filed in a timely manner by identifying the relevant time frame for both the misleading statements and their purchases in accordance with ***Pucci v. Litwin***, 828 F.Supp. 1285, 1297 (N.D.Ill. 1993). The Investors contend that the pleadings included: (1) the actual time the securities were purchased ; (2) the time and circumstances of the discovery of the fraudulent statement--at the bankruptcy filing; (3) the reasons why it was not discovered before--concealment by the Defendants; and (4) the diligent efforts which the plaintiffs undertook in making or seeking such discovery--discussions among themselves, review of the PPM, and timely filing.

¶24. Based on the contents of the registration statement and Form 10-K which were filed with the SEC, we follow the findings of the trial court. Since some jurisdictions have held filings with the SEC to be notice "as a matter of law," and constructive notice has been held to apply to Cal. Corp. Code § 25506, it is not difficult to support the findings of the trial court "as a matter of law." In addition, the registration statement and Form 10-K are littered with disclosures containing information pertinent to the exact elements of the Investors' claims. The Investors suggest that they did not receive the statements. The record also reflects that the Defendants did not send the PPM to the Investors either.

¶25. The Defendants' filings with the SEC openly reflect the problems with the casino venture. Therefore, the Investors' claims of concealment are not well-founded. The investors made no assertion of lack of due diligence either. Thus, the statutory bar on limitation cannot be overcome.

### III. WHETHER THE ANTI-FRAUD PROVISIONS OF CALIFORNIA'S, FLORIDA'S, AND MISSISSIPPI'S SECURITIES STATUTES APPLY TO SALES OF COMMON STOCK BY NON-DEFENDANT SELLERS WHERE THE PRIVATE PLACEMENT MEMORANDUM PREPARED BY THE DEFENDANTS/APPELLEES TO ISSUE PREFERRED SHARES ALLEGEDLY MATERIALLY MISREPRESENTED THE INFORMATION RELIED UPON BY THE INVESTORS.

¶26. The trial court dismissed all of the Investors' claims under California, Florida, and Mississippi statutory law regarding the sale of securities for lack of privity between the Investors and the Defendants. None of the Investors remaining in the claim purchased any shares of stock from Kinnard nor did the Investors purchase their stock based on the PPM. Finally, none of the Investors remaining in the claim purchased the same class of stock as Kinnard offered through the PPM. Rather, these Investors purchased Palace Casino common stock from dealers other than the Defendants. The Investors argue that privity is not required by the statutes. Therefore, the Investors argue, their claim

should not have been dismissed by the trial court.

## California

¶27. The California Investors, Behrens, the Browns, and Herrin, contend that the Defendants, through the PPM, violated Cal. Corp. Code § 25400(d) by issuing a statement that was false or misleading regarding a material fact or omitting a material fact in an attempt to alter the price of the stock, subjecting the Defendants to liability under Cal. Corp. Code § 25500 for committing "fraud on the market."

¶28. The relevant statutes state:

> It is unlawful for any person, directly or indirectly, in this state:
>
> . . . . .
>
> (d) If such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code § 25400 (1997).

> Any person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction. Such damages shall be the difference between the price at which such other person purchased or sold securities and the market value which such securities would have had at the time of his purchase or sale in the absence of such act or transaction, plus interest at the legal rate.

Cal. Corp. Code § 25500 (1997).

¶29. The Investors argue that the preceding statutes do not require privity between the buyer and seller of securities or reliance on the misrepresentation on the part of buyer. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1102-1104, 23 Cal.Rptr.2d 101, 113-115, 858 P.2d 568 (1993).

¶30. The Palace Defendants make a compelling argument, which was accepted by the trial court, that both § § 25400 and 25500 apply only to sellers of securities thereby distinguishing *Mirkin*. In order to be classified as a seller of securities under § 12 of the Securities Act of 1933, one must transfer title or solicit trade because of his own financial self-interest and align himself with the actual seller. *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658, 682 (1988). It has been clearly held that only sellers under § 12 of the federal act are subject to liability under §§ 25400 and 25500. *In re Activision Securities Litigation*, 621 F.Supp. 415, 422 (N.D. Cal. 1985). We find that the Palace Defendants are not "sellers" as intended by § 12. Therefore, they are not subject to liability under

§ § 25400 and 25500.

¶31. Although we reject the plaintiffs' claim under California's codified version of fraud-on-the-market, this Court henceforth recognizes the validity of the fraud-on-the-market theory. The fraud-on-the-market theory, developed by courts to protect investors who do not directly rely on misinformation, protects the integrity of the market as a whole by ensuring that the market receives timely and accurate information. *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 360 (5th Cir. 1987). Since the goal of the fraud-on-the-market doctrine is to ensure a level playing field for all potential investors, a plaintiff need not show that he heard or relied on the misrepresentations. *Shores v. Sklar*, 647 F.2d 462, 469 (5th Cir.1981); *Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir. 1975). He need only show that the defendant's misrepresentation distorted the securities market price and that the plaintiff was relying on the integrity of the market to establish the genuine value of the securities by reflecting all material information available. *Shores*, 647 F.2d at 469.[(3)]

### Florida

¶32. The six Florida Investors asserted in the Complaint that the Defendants violated Fla. Stat. Ann. § 517.301(1)(a)(1) and (3), subjecting them to damages pursuant to Fla. Stat. Ann. § 517.211(6). The Investors did not buy their stock from the Defendants and did not buy Preferred Stock as described in the PPM. Consequently, the trial court dismissed the Investors' claim based on a lack of privity with the Defendants.

¶33. The trial court made the correct decision. "The Florida courts have been clear in requiring privity between a plaintiff and defendant in upholding a violation of F.S.I.P.A. *E.F. Hutton & Co. v. Rousseff*, 537 So.2d 978 (Fla. 1989); *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F. Supp. 342 (S.D. Fla. 1991); *In re Checkers Securities Litigation*, 858 F. Supp. 1168, 1180 (M.D. Fla. 1994)." Thus, the investor's claim should be dismissed for lack of privity.

¶34. The Investors now argue that Fla. Stat. Ann. § 517.241 (3) provides a remedy outside the scope of Florida's statutory scheme by "importing federal law remedies" for violations of Fla. Stat. Ann. § 517.301(3). The Investors claim is based upon *Palmer v. Shearson Lehman Hutton*, **Inc**., 622 So.2d 1085 (Fla. Dist. Ct. App. 1993). The Defendants are violently opposed to the consideration of this argument because it is outside the scope of the pleadings.

¶35. The *Palmer* decision cited by the Investors is readily distinguishable from the more persuasive *Rousseff*. *Palmer* arose from the failure of Shearson Lehman to report alleged securities violations of a terminated employee. After discovering the violations, Shearson Lehman allowed the employee to resign and did not report the violations to anyone, as required by statute. The employee subsequently joined another group and committed the same violations. Palmer suffered a pecuniary loss resulting from the violations and sought damages from Shearson Lehman.

¶36. In this negligence action, the Florida Court of Appeals found that privity as required by *Rousseff* did not apply in this instance because "*Rousseff* does not deal with claims of statutory violations like those alleged in these cases." *Palmer*, 622 So.2d at 1091. Furthermore, it is important to note that the court in *Palmer* did not overrule *Rousseff*, preferring to distinguish the two cases.

¶37. The Investors' arguments are not well-founded on this issue. None of the claims referred to in

the Complaint even remotely mention Fla. Stat. Ann. § 517.301(3) or the "import[ation] of federal law into Florida's statutory scheme" under Fla. Stat. Ann. § 517.241(3). Further, there is no mention of the Investors' desire to pursue all claims and remedies available under the Act. Therefore, we affirm the decision of the trial court dismissing the claims of the Investors.

## Mississippi

¶38. The lone Mississippi Investor, Guy Evans, claims that the PPM created by Kinnard and the Palace Defendants violated the Mississippi Securities Act, Miss. Code Ann. § 75-71-101, *et seq.*, as amended. Evans alleges that Kinnard and the Palace Defendants made materially misleading statements in the PPM which operated as a fraud in violation of Miss. Code Ann. § 75-71-501. The statute provides:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly,
>
> (1) To employ any device, scheme or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Miss. Code Ann. § 75-71-501 (1991).

¶39. The trial court dismissed the claim for lack of privity between Evans and the Defendants because the Mississippi statute was modeled after Rule 10b-5 of the Securities Exchange Act of 1934 and is almost identical to the Florida statute, *citing* ***Geisenberger v. John Hancock Distributors, Inc.***, 774 F. Supp. 1045 (S.D. Miss. 1991), and ***E.F. Hutton & Co.***, 537 So.2d 980, 981(Fl. 1989). The trial court also emphasizes the damages available for a violation of the Mississippi Securities laws. Provided there is privity, recission damages are allowed in a securities fraud case. Miss. Code Ann. § 75-71-717(a)(2)(1991).

¶40. Since § 75-71-717 does not address the remedy for a violation of § 75-71-501, the Defendants argue that the Investors' pleadings were inadequate because they sought damages under § 75-71-717(a)(2) and that § 75-71-501 does not give rise to a private cause of action. However, it has been held that § 75-71-501 creates a distinctly different private cause of action from that of § 75-71-717(a)(2). ***Geisenberger***, 774 F. Supp. at 1049.

¶41. This issue is one of first impression before the Court. Since there is no express provision for an individual cause of action or for private damages in the Code regarding a violation of § 75-71-501, we decline to follow the assessment in ***Geisenberger***. We find that § 75-71-501 is virtually identical to § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q. The overwhelming weight of authority holds that no private right of action is to be implied from § 17(a) of the federal act. ***Landry v. All American Assurance Co.***, 688 F.2d 381, 389-91 (5th Cir. 1982); ***Keys v. Wolfe***, 709 F.2d 413 (5th Cir. 1983); ***Shull v. Dain, Kalman & Quail, Inc.***, 561 F.2d 152, 159 (8th Cir. 1977). Therefore, we

find that § 75-71-501 does not create a private right of action and affirm the trial court's dismissal of this claim.

### IV. WHETHER THE TRIAL COURT ERRED IN DETERMINING, AS A MATTER OF LAW, THAT THE INFORMATION AVAILABLE TO THE INVESTORS CONTAINED ADEQUATE DISCLOSURES TO INFORM THEM OF THE RISKS IN BUYING STOCK IN PALACE CASINOS, INC.

¶42. The Investors contend that they bought shares of Palace Casino common stock in reliance on the information contained in the PPM. They argue that the PPM contains material misrepresentations and omissions on which they relied. The trial court determined "as a matter of law" that the warnings and cautionary language contained in the PPM concerning each of the Investors' charges of misrepresentation were sufficient to preclude a claim for securities misrepresentation based on the "Bespeaks Caution" doctrine.

¶43. Although the "Bespeaks Caution" doctrine was developed under federal law, it is entirely appropriate for the claims presented by the Investors because the state statutes mirror Rule 10b-5, and courts have generally applied the requirements and provisions of Rule 10b-5 to the state statutes.[(4)] Generally, the "Bespeaks Caution" doctrine states that sufficient cautionary language renders alleged misrepresentations immaterial as a matter of law. ***Moorhead v. Merrill Lynch, Pierce, Ferner & Smith, Inc.***, 949 F.2d 243, 245-46 (8th Cir. 1990). The "Bespeaks Caution" doctrine applies when "optimistic projections are coupled with cautionary language--in particular , relevant specific facts or assumptions--affecting the reasonableness of the reliance on and the materiality of those projections." ***Rubinstein v. Collins***, 20 F.3d 160, 167 (5th Cir. 1994). This means that offered documents must be read as a whole, and their statements must be read in context. ***Rubinstein***, 20 F.3d at 167. To properly address this issue in the case *sub judice*, one must review the PPM in its entirety. After careful consideration, we conclude that the trial court was correct in finding that the warnings were sufficient as a matter of law, containing the specificity required by ***Rubinstein***. ***Id.*** at 171.

¶44. The Investors cite ***Kline v. First Western Government Securities, Inc.***, 24 F.3d 480 (6thCir. 1994), *cert den*. 513 U.S. 1032 (1995), to support the proposition that the cautionary disclaimers must relate directly and specifically to the predictive statements which the plaintiff claims to have considered material. ***Kline***, 24 F.3d at 489. Both parties go to great lengths to address this situation. To avoid prolixity, we do not address each individual claim. Rather, we hold that the disclosures presented by the Defendants were indeed sufficient as a matter of law.

¶45. In conclusion, the PPM is replete with warnings and cautionary language regarding the casino venture. Furthermore, the PPM was targeted to a specific group of investors. The Investors were not targeted by the Defendants, did not buy the Preferred Stock through the issuance discussed in the PPM, and did not even purchase the same class of stock as described in the PPM. When consideryng the PPM, as a whole, it is clear that the warnings are sufficient as a matter of law.

### V. WHETHER, UNDER UTAH LAW, THE SHAREHOLDERS HAD STANDING TO SUE THE INDIVIDUALS BELIEVED RESPONSIBLE FOR THE DESTRUCTION AND DEMISE OF THE COMPANY.

¶46. The final claim proposed by the Investors only involves the Palace Casino Defendants. The Investors allege that the directors and officers of Palace Casinos, Inc. failed to exercise due care in placing misrepresentations and omissions into the marketplace for Palace shares and that the Defendants made operating decisions which violate the "business judgment rule." The claims are based on Utah Code Ann. §§ 16-10a-840 and 841, which codify the "business judgment rule" under Utah law.

¶47. The trial court found that Utah law did not permit a private action against officers of a corporation by the individual shareholders. "Directors and officers of a corporation owe a fiduciary duty to their corporation. Any fiduciary duty owed to shareholders of a corporation is owed to the shareholders collectively and not individually." ***Pond v. Equitable Life and Casualty Ins. Co.***, 872 P.2d 1070, 1072 (Utah Ct. App. 1994). The trial court also found that the Investors failed to plead fraud with the specificity required by Miss. R. Civ. P. 9(b).

¶48. We find that the record contains no specific allegations of fraud as required by Miss. R. Civ. P. 9(b). Furthermore, the cases cited by the Investors to contradict the findings of the trial court are readily distinguishable and irrelevant. Accordingly, we affirm the trial court on this issue.

## CONCLUSION

¶49. The Investors claim that they purchased shares of Palace Casino common stock in reliance on the PPM associated with the issuance of Preferred Stock. However, there is no privity between the Investors and the Defendants. All purchases were made from unnamed third-parties who are not involved in this suit. The Investors ask us to overlook the requirement of privity in California, Florida, and Mississippi law. We decline this request.

¶50. Further, the PPM is clear in its warnings and cautionary language. It is virtually impossible to read the PPM in its entirety without realizing the risky nature of the casino venture. Additionally, all of the complaints alleged by the Investors are addressed by the PPM. The Investors are merely seeking a scapegoat for their poor investment. Even in the event of fraud on the part of the directors and Kinnard, the Investor's claims are barred for lack of privity.

¶51. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS AND SMITH, JJ., CONCUR. PRATHER, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶52. The majority correctly affirms the circuit court's in personam jurisdiction on the basis of ***Shewbrooks v. A.C. and S., Inc.***, 529 So. 2d 557 (Miss. 1988). It erroneously fails, however, to go one step further and apply ***Shewbrooks*** to the statute of limitations problem addressed in Issue II. Further in Issue IV, the majority misconstrues the Fifth Circuit's decision in ***Rubinstein v. Collins,*** 20 F.3d 160 (5th Cir. 1994) by finding pursuant to the "bespeaks caution" doctrine, that the circuit court

correctly determined, as a matter of law, that the cautionary language contained in the PPM provided sufficient disclosure to investors of the risks involved in the Palace Casinos venture. Accordingly, I dissent.

¶53. While the majority properly affirms the circuit court's in personam jurisdiction over the foreign parties pursuant to *Shewbrooks*, it fails to recognize that case's applicability also to the statute of limitations issue. *Shewbrooks* clearly states that it is within "the power of a forum's Legislature to prescribe times in which suits may be brought." *Shewbrooks,* 529 So. 2d at 565. In a transitory action, whether in tort or contract, our courts have been open wherever we have subject matter jurisdiction and can obtain jurisdiction over the parties voluntarily or by service of process. *Pullman Palace Car Co. v. Lawrence,* 74 Miss. 782, 796, 22 So. 53 (1897). Since the Mississippi courts have jurisdiction, the Mississippi statute of limitations also is applicable. *Shewbrooks,* 529 So. 2d at 566; *Vick v. Cochran,* 316 So. 2d 242, 246 (Miss. 1975).

¶54. The majority correctly observes that the fraud on the market theory is inapplicable to the case *sub judice*. A footnote to a case in which the theory is not even applicable, however, is not the proper place for this Court to adopt a new theory of law. The United States Supreme Court explained the fraud on the market theory in *Basic Inc. v. Levinson,* 108 S.Ct. 978, 485 U.S. 224, 99 L.Ed. 2d 194 (1988):

> "The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements. . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."

*Basic,* 485 U.S. at 241-242, 99 L.Ed. 2d at 215 (*quoting Peil v. Speiser,* 806 F. 2d 1154, 1160-1161 (3d Cir. 1986). Applying the theory to public statements made by a publicly-traded company regarding merger talks, the Court noted how "[t]he modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases . . . ." 485 U.S. at 2443-244, 99 L.Ed. 2d 216. By definition, the privately placed securities at issue do not fall with the ambit of an open and developed securities market; rather they involve face-to-face transactions of securities that are neither highly liquid nor marketable.

¶55. I further disagree with the majority's determination that the cautionary language contained within the PPM, as a matter of law, renders the complained of "misrepresentations" immaterial or inactionable. To so find misconstrues *Rubinstein v. Collins,* 20 F.3d 160 (5th Cir. 1994) and misapplies the "bespeaks caution" doctrine. It is an issue to be determined on a case-by- case basis by the trier of fact and not, as the majority and the lower court have done, as a matter of law. Moreover, the majority opinion, as written, has not developed the facts of the case sufficiently -- or even acquainted us with the substance of the lower court's findings -- to make the requisite case-by-case finding. Without development of the substance of the language claimed to have misled the investors and the cautionary language which the lower court and the majority have found, as a matter of law, to have negated their claims, it cannot be said that the warnings in the PPM were sufficiently specific to satisfy *Rubinstein.* It further is less than clear whether the majority is applying the "bespeaks

caution" doctrine to a finding of materiality or actionability, or whether it even understands the distinction.

¶56. In *Rubinstein*, the Fifth Circuit reversed the district court's finding that economic forecasts and predictions could not, as a matter of law, constitute material misrepresentations because they were couched in cautionary language. Discussing the evolution of the "bespeaks caution" doctrine in response to "the unique nature of fraud actions based on predictive statements," the court explained:

> In essence, predictive statements are just what the name implies: predictions. As such, any optimistic projections contained in such statements are necessarily contingent. Thus, the "bespeaks caution" doctrine has developed to address situations in which optimistic projections are coupled with cautionary language--in particular, relevant specific facts or assumptions--affecting the reasonableness of the reliance on and the materiality of those projections. To put it another way, the "bespeaks caution" doctrine merely reflects the unremarkable proposition that statements must be analyzed in context.

*Rubinstein,* 20 F.3d at 167 (footnotes omitted). The *Rubinstein* court made clear that such cautionary language must be considered on a case-by-case basis and does not, as a matter of law, render "optimistic statements" not materially misleading.

> *Under our precedent, cautionary language is not necessarily sufficient, in and of itself, to render predictive statements immaterial as a matter of law.* Rather, as we have proclaimed, "[m]ateriality is not judged in the abstract, but in light of the surrounding circumstances." The appropriate inquiry is whether, under all the circumstances, the omitted fact or the prediction without a reasonable basis "is one [that] a reasonable investor would consider significant in [making] the decision to invest, such that it alters the total mix of information available about the proposed investment." Inclusion of cautionary language--along with disclosure of any firm-specific adverse facts or assumptions--is, of course, relevant to the materiality inquiry, for such inclusion or disclosure is part of the "total mix of information." *Nevertheless, cautionary language as such is not per se dispositive of this inquiry.*

*Id.* at 167-168 (footnotes omitted)(emphasis added). *See also Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed. 2d 929 (1991)(when the misrepresentation or representation is such that other language does not reduce its importance to investors, the misrepresentation or omission is actionable; misrepresentations or omissions are actionable when materially misleading).

*¶57.* The "bespeaks caution" doctrine further has been explained and applied in *In re Donald J. Trump Casino Securities Litigation,* 7 F.3d 357 (3d Cir. 1993). Investors in Trump's Taj Mahal casino in Atlantic City, after learning that a Chapter 11 filing and reorganization were planned, charged that the prospectus accompanying a $675 million public offering of first mortgage bonds was materially misleading in its representation that "The Partnership believes that funds generated from the operation of the Taj Mahal will be sufficient to cover all of its debt service (interest and principal) ." *Trump,* 7 F.3d at 365. The prospectus contained disclaimers and cautionary statements stressing the competition in the industry, the unprecedented size of such a casino in Atlantic City, the absence of an operating history upon which to place a valuation, and most importantly, "the enterprise's potential inability to repay the interest on the bonds in the event of a mortgage default and

subsequent liquidation of the Taj Mahal." ***Id.*** While the ***Trump*** court emphasized that the plaintiffs did not have an actionable claim because of "the abundant and meaningful cautionary language contained in the prospectus," it emphasized that the "bespeaks caution" doctrine must be applied on a case-by-case basis. ***Id.*** at 371. As the Third Circuit stated,

> Of course, a vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge.

***Id.*** at 371-372. Absent any specific findings that the cautionary language supposedly contained within the PPM directly qualified any misleading claims made therein, I fail to see how the majority can find, as a matter of law, that the plaintiffs have no cause of action.

¶58. We may question the prudence of investors who elect to fund their pension and profit sharing plans with inherently high risk investments. However, our securities laws exist to protect not only the savvy investor or the unsuspecting victims of unsavory investment scams, but all who invest their savings in any security or investment coming within the purview of state and federal securities laws.

1. The Defendants are members of two distinct groups:

The Kinnard Defendants include:

> John G. Kinnard & Co, Inc., Thomas J. Mulvaney, Daniel R. Sass, Lee S. Felicetta, Francis W. Braun, Arthur J. Kearney, Thomas E. Moore, Robert S. Spong, K. Edward Eiverud, and Patrick M. Sidders.

The Palace Casino Defendants are current and former officers and directors of Palace Casinos, Inc.:

> William C. Wortman, Richard J. Lawrence, Thomas A. Lettero, Charles A. Brewer, Robert K. Gray, James S. Mush, Renate Schiff, Jack R. Crawford, and John H. Harvey.

2. Acker, Gazie, and Young have settled their claims in another jurisdiction and are no longer part of this appeal.

3. Although we adopt the fraud-on-the-market theory in Mississippi, it does not apply in the case sub judice. While the plaintiffs in the present case allege fraudulent misrepresentations in the PPM, they failed to contend that this affected the market price of the securities in question. Thus, the fraud-on-the-market theory is inapplicable in this case as pled.

4. *See*, *e.g.*, ***In re Checkers Securities Litigation***, 858 F.Supp. 1168 (M.D. Fla. 1994) (applying requirements under 10b-5 to Florida Investor Protection Act); ***Geinsenberger v. John Hancock Distributors, Inc.,*** 774 F.Supp. 1045, 1051 (S.D. Miss. 1991) (equating the requirements under Miss. Code Ann. § 75-71-501 with Rule 10b-5); ***Mirkin v. Wasserman,*** 858 P.2d 568, 580 (Cal.

1993) (applying requirements of Rule 10b-5 to Cal. Corp. Code § 25500)